LEWIS, J.
Abraham Brown, Appellant, appeals his convictions and sentences for burglary of an occupied dwelling, violation of an injunction for protection against domestic violence, interference with custody, and criminal mischief. Because the trial court abused its discretion in denying Appellant’s unequivocal request to cease self-representation and obtain appointed counsel, we are constrained to reverse for a new trial, rendering the remaining issues moot.
Appellant has now been convicted of the offenses at issue twice. He represented himself in both trials. After the first trial, we reversed Appellant’s convictions because the trial court failed to conduct an adequate inquiry to determine whether Appellant was competent to waive his constitutional right to counsel. Brown v. State, 971 So.2d 270, 271 (Fla. 1st DCA 2008). When the case was remanded in early 2008, Appellant again undertook self-representation. He continued to represent himself throughout 2008 and did not seek to have counsel appointed again until the final pretrial hearing on April 9, 2009.
At the beginning of the final pretrial hearing, the court offered counsel to Appellant, as it was required to do under Traylor v. State, 596 So.2d 957, 968 (Fla.1992), and Florida Rule of Criminal Procedure 3.111(d)(5). Appellant informed the court that he would like to have “co-counsel.” When the court noted that it had not asked about co-counsel and instead had asked whether Appellant would like to have an attorney represent him, Appellant answered, “At this time, Your Honor, I [will] still proceed on my own.” Thereafter, the court asked Appellant a series of questions to determine whether he understood the advantages of having an attorney and the disadvantages of self-representation. The discussion then moved into the potential penalties Appellant would face if convicted. During this portion of the discussion, Appellant indicated that he did not have the scoresheet that was prepared for the first trial, stating, “I don’t have anything. That’s why I’m — .” The court interrupted, stating, “Well, we’ll address that in a minute.”
Later in the colloquy, the court asked Appellant whether he had any questions “about having a lawyer appointed to defend [him].” At that point, the following exchange occurred:
DEFENDANT BROWN: The only question I just have just — I’m asking for a co-counsel for as far as like anything that need[s] to be filed with the court that I can’t get over here to file, like for subpoenas and stuff like that the lawyer could do on my behalf to speed the process up without being any delay and stuff. I know the Court is not going to be lenient as far as like catering to my needs and stuff and I’m — but it’s some things that I’m just — I’m hindered from being able to do from being incarcerated, you know.
THE COURT: Okay. I’ll get to that issue in a minute. Other than that issue which you told me before, and we’ll get to that in a moment, do you have any other questions about having a lawyer appointed to defend you?
DEFENDANT BROWN: No, ma’am.
THE COURT: Having been advised of your right to counsel and the advantages of having counsel and the disadvantages and dangers of proceeding without counsel, the nature of the charges and the possible consequences in the event of a conviction, are you certain that you do not want me to appoint a lawyer to *113 defend you, other than your request for co-counsel?
DEFENDANT BROWN: Yes.
THE COURT: Are you certain you do not want me to appoint a lawyer to defend you?
DEFENDANT BROWN: Yes, ma’am. THE COURT: If I allow you to represent, yourself — well, let me ask the State. You indicated you wanted to be heard on this request for co-counsel before I get into that.
The State argued that Appellant was not entitled to “hybrid representation” and that he was especially not entitled to have an attorney act as his “go-for.” The State further contended that Appellant did not have an “absolute right” to withdraw his request to represent himself. As grounds for denying Appellant’s request, the State argued, in part, that Appellant had gone through the Faretta,[1] inquiry many times and had “on April 17, 2008, June 25th, 2008, July 30th, 2008, October 29th, 2008, November 5th, 2008, November 24th, 2008, December 11th, 2008, and again [at the pretrial hearing] reaffirmed every time that he wishe[d] to represent himself.” The State also opined that Appellant’s request for co-counsel was “a deliberate tactical move” made “out of a continuing desire to manipulate these proceedings.”
Appellant offered the following comments in response to the State’s arguments:
I’m new to all this here and I do not deny that in any kind of way, but I was understanding that as part of my — as part of my constitutional right that I do have a right to — to representation of a counsel and that it could be appointed to me if I deemed or seen fit that I needed counsel. Now I’m asking to handle my own case and be pro se because I’m having a conflict with the PD’s Office about issues and stuff that the Court is not aware about.... But I’m asking this because I believe this is in my best interest. I’m admitting straight up to the Court I don’t know the law like that there and I’m just asking for a co-counsel to help speed up the process, to not be setting up saying I’m using tactics to delay and this and that because certain things I don’t have access to [in jail].
The court informed Appellant that if he represented himself, he would have to do so “in the situation [he was] in.” Without asking Appellant whether he still desired to represent himself in the event that the court declined to appoint co-counsel, the court announced its finding that Appellant was competent to waive counsel, had done so knowingly and intelligently, and would be allowed to proceed pro se.
Immediately thereafter, Appellant expressed concern about whether he could competently represent himself. He summed up his position as follows:
[I]f I go to trial and I could have a co-counsel just to — just to — what I told the courts [t]hat I need, I would like to proceed pro se. If I can’t have a co-counsel, then I don’t need to be pro se because it will kill the whole issue and I know I wouldn’t be able to stand up and do it on my own because I wouldn’t know what to do on certain parts....
The court indicated its understanding of Appellant’s position, stating, “Now, he’s telling me if I’m not going to appoint co-counsel he does not want to represent himself.” However, the court found that the instant case was similar to Wheeler v. State, 839 So.2d 770 (Fla. 4th DCA 2003), where the Fourth District held that a court was not required to grant an equivocal request for reappointment of counsel. *114 The trial court in the instant case noted that Appellant had already answered the Faretta inquiry and had stated many times that he did not trust the Public Defender’s Office or want to be represented by it. For these reasons, the court “decline[d] [Appellant’s] request to appoint co-counsel.”
Appellant informed the court, “I’m asking if I can’t have co-counsel, can I go ahead and get the Public Defender’s Office because I wouldn’t know how to proceed through trial.” The court found that Appellant was “flip-flopping” and, accordingly, denied his request for appointment of counsel. Appellant told the court that he could not “proceed through trial on [his] own.” The court responded, “You’ve already told me that you could and that you wanted to.” Appellant explained that he told the court that he could proceed through trial “with a co-counsel.” The court disagreed, pointing out that none of the Faretta questions referenced co-counsel. Appellant requested to withdraw his motion to represent himself, and this request was denied.
Before jury selection began on April 13, 2009, the trial court initiated another Far-etta inquiry, reviewing the questions that had been posed at the pretrial hearing and asking whether Appellant still understood. Appellant asked whether this inquiry was being conducted because he still had a choice between counsel and self-representation, or whether he was simply supposed to answer the questions because the court was posing them. The court replied, “Well, you’re supposed to answer them regardless, whatever the answer is.” At the end of the inquiry, the court asked Appellant for his decision regarding whether he wanted to have an attorney appointed. Appellant replied as follows:
Once again, I will state that if I could have a co-counsel, I would like to remain pro se, and if I cannot have a co-counsel, due to the parts of the trial that I am not familiarized with or competent in handling, I would ask for a PD back. My reason for co-counsel is just for the parts that I don’t know.
The court found that Appellant’s behavior was “willy-nilly,” that he was not entitled to co-counsel, and that he was attempting to manipulate the proceedings. The case pi’oceeded to jury selection and the remainder of the trial without an additional offer of counsel. Appellant was convicted on all counts, and he proceeded to sentencing with an attorney from the Public Defender’s Office.
A trial court’s “decision as to self-representation” is reviewed for abuse of discretion. Holland v. State, 773 So.2d 1065, 1069 (Fla.2000). Additionally, courts have observed that a court’s ruling on a defendant’s demand for self-representation “turns primarily on an assessment of demeanor and credibility,” such that “its decision is entitled to great weight and will be affirmed on review; if supported by competent substantial evidence.” Morgan v. State, 991 So.2d 984, 987 (Fla. 4th DCA 2008) (quoting Potts v. State, 718 So.2d 757, 759 (Fla.1998)).
In Faretta v. California, 422 U.S. 806, 819-20, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the Supreme Court recognized the Sixth Amendment right to self-representation. However, because defendants who represent themselves “relinquish ] ... many of the traditional benefits associated with the right to counsel,” the Faretta Court held that the decision to forgo appointed counsel must be made knowingly, intelligently, and with an awareness of the “dangers and disadvantages of self-representation.” Id. If a trial court finds that a defendant has properly invoked the right to self-representation, it may appoint “standby counsel,” but is not required to *115 do so.[2] Jones v. State, 449 So.2d 258, 258 (Fla.1984).
The rights to counsel and to self-representation are both recognized in the “Counsel Clause” of Article I, Section 16(a) of the Florida Constitution. See Traylor v. State, 596 So.2d 957, 966-67 (Fla.1992). Like federal law, Florida law requires that the waiver of the right to counsel in favor of self-representation be “knowing, intelligent, and voluntary.” Id. at 968. Additionally, both Florida and federal law “will indulge every reasonable presumption against waiver of th[e] fundamental right” to counsel. Id.
In Traylor v. State, the Florida Supreme Court held a criminal defendant “is entitled to decide at each crucial stage of the proceedings whether he or she requires the assistance of counsel.” 596 So.2d at 968. In view of this right, the Traylor court further held that “[a]t the commencement of each such stage, an unrepresented defendant must be informed of the right to counsel and the consequences of waiver.” Id. Additionally, the Traylor court held that “[w]here the right to counsel has been properly waived, the State may proceed with the stage in issue; but the waiver applies only to the present stage and must be renewed at each subsequent crucial stage where the defendant is unrepresented.” Id. A “crucial stage” is one “that may significantly affect the outcome of the proceedings.” Id.
The Traylor holding mirrors Florida Rule of Criminal Procedure 3.111(d)(5), which provides that “[i]f a waiver [of counsel] is accepted at any stage of the proceedings, the offer of assistance of counsel shall be renewed by the court at each subsequent stage of the proceedings at which the defendant appears without counsel.” Thus, both Traylor and Rule 3.111(d)(5) indicate that a defendant may change his mind about self-representation at the beginning of any crucial stage of a criminal prosecution. See Stinnett v. State, 576 So.2d 927, 928-29 (Fla. 5th DCA 1991) (observing that a trial court incorrectly advised a defendant in stating that if the defendant elected self-representation at a suppression hearing, he could not change his mind and be represented at trial); Cf. Horton v. Dugger, 895 F.2d 714, 716 (11th Cir.1990) (indicating that, under federal law, “[t]he functional right of a defendant to withdraw his request to represent himself and reassert the right to counsel at any time immediately before, or perhaps even during trial, is, absent deliberate manipulation, virtually assured”).
Despite the option for a criminal defendant to change his mind about self-representation, the Florida Supreme Court has observed that it is “implicit in Faretta that the right to appointed counsel, like the obverse right to self-representation, is not a license to abuse the dignity of the court or to frustrate orderly proceedings, and a *116 defendant may not manipulate the proceedings by willy-nilly leaping back and forth between the choices.” Jones v. State, 449 So.2d 253, 259 (Fla.1984). Such behavior was found in Jones v. State, where the defendant requested that his first attorney be discharged and began representing himself with the assistance of standby counsel, whom he later requested be discharged. 449 So.2d at 256. Although the trial court refused to discharge standby counsel, it did appoint a second attorney to act as additional standby counsel, and the defendant refused to cooperate with this attorney as well. Id. at 257. On the second day of trial, after the State had begun its case, the defendant requested the reappointment of counsel. Id. The trial court denied this request. Id. During the sentencing phase of the trial, the defendant requested funds to obtain private counsel, asserting that all of the appointed attorneys were incompetent. Id. The trial court denied the defendant’s improper request and did not renew the offer of appointed counsel. Id. The Florida Supreme Court approved the trial court’s decisions in Jones, noting the defendant’s “contumacious behavior.” Id. at 257-58.
In Langon v. State, 791 So.2d 1105 (Fla. 4th DCA 1999), the Fourth District applied the Jones court’s admonition against “willy-nilly leaping back and forth.” Over the course of three years, there were six different lead attorneys appointed for the Langon defendant’s case. See 791 So.2d at 1106-09. Four of these attorneys either withdrew or were discharged due to conflicts with the defendant and the defendant’s refusal to cooperate in the preparation of his defense. See id. at 1106-09. On more than one occasion, the trial court found that the defendant was manipulating the system and warned him to stop. Id. at 1108-09. With both the last and the next-to-last appointments of attorneys, the court informed Appellant that if he refused to cooperate in the preparation of his defense, the case would proceed to trial anyway. Id. at 1108. The last attorney who represented the defendant filed a motion to withdraw, informing the court that the defendant wished to represent himself so that he could have more time in the law library. Id. The court observed that the defendant was “one of the most manipulative defendants or litigants that [it] had ever experienced,” but it granted the motion, warning the defendant that he would not be allowed to change his mind and have counsel appointed. Id. On appeal, the Langon defendant argued that the trial court erred in failing to renew the offer of counsel at each crucial stage of the proceedings. 791 So.2d at 1112. The appellate court rejected this argument, noting that to reverse under the circumstances would “exalt form over substance” because the trial court had repeatedly warned the defendant that the offer of counsel would not continue to be extended and the defendant had manipulated the proceedings. See id. at 1113.
In Wheeler v. State, 839 So.2d 770, 774 (Fla. 4th DCA 2003), which the State argues is analogous to the instant case, the Fourth District identified another circumstance under which a trial court would not be required to appoint counsel after a defendant has begun self-representation: where the request is equivocal. In Wheeler, the court conducted a thorough Faretta inquiry, had the defendant sign a written waiver of her right to counsel, and appointed standby counsel. Id. at 771-72. At a separate hearing “[s]ome time later,” the defendant requested additional assistance from standby counsel, but it was unclear whether she was simply requesting help from standby counsel or whether she wanted counsel appointed. See id. On appeal, the Wheeler defendant argued that the trial court should have appointed coun *117 sel. Id. The Fourth District disagreed, concluding that, “having the best vantage point to assess the situation,” the trial court correctly determined that the defendant had not directly requested counsel. Id.
Essentially, the Wheeler court opined that the equivocal nature of the defendant’s request for reappointment of counsel rendered it unreviewable because an alternative view would allow defendants to make equivocal requests and then win a reversal on appeal no matter which way the trial court ruled; on one hand, the denial of an equivocal request could be considered the denial of the right to counsel, while on the other, the granting of such a request could be considered the denial of the right to self-representation. See 839 So.2d at 774. The court noted that “[s]uch ‘heads I win, tails you lose’ tactics” should be rejected. Id. Based on these considerations, the Wheeler court held that the trial court acted within its discretion in not re-appointing counsel. Id.
Here, Appellant argues that the trial court abused its discretion in denying his request for reappointment of counsel at the pretrial hearing and again at jury selection. The record supports his position.
Unlike the defendant in Wheeler, Appellant unequivocally requested that the court reappoint counsel. Although Appellant stated at the April 9, 2009, hearing that he wanted to represent himself and that he did not trust the Public Defender’s Office, he unequivocally changed his mind when it became clear that the trial court would not appoint co-counsel. Although the trial court considered the issue of co-counsel a separate matter from the issue of self-representation, Appellant made clear over the course of the hearing that the two issues were related from his perspective; he wanted to represent himself if he could have co-counsel, and he wanted to be represented if he could not have co-counsel. If Appellant’s position was unclear before the court found that he had waived the right to counsel, it became clear immediately afterwards when he expressed that he did not feel competent to represent himself without the assistance of co-counsel, when he asked to withdraw the motion to represent himself, and when he reiterated his concerns at jury selection, specifically asking “for a PD back” in response to the court’s Faretta inquiry. Because both Traylor and Rule 3.111(d)(5) indicate that a defendant is entitled to change his mind concerning self-representation, the trial court should have allowed him to do so.
The limitation on a defendant’s right to reclaim the right to counsel should not have been applied here because the record does not support a finding that the decision to invoke the right was made “willy-nilly,” manipulatively, or unreasonably. Unlike in Jones and Langon, there is no indication in the instant record that Appellant constantly changed his mind about whether to be represented during a single stage of the proceedings or that he attempted to invoke the right to counsel mid-trial. Instead, the record indicates that when the case was reversed and remanded, Appellant decided to represent himself and maintained that request from that time until the pretrial hearing, a year and a half later. Even the prosecutor’s arguments at the pretrial hearing reflect this consistency in Appellant’s position. Although the case was continued more than once while Appellant represented himself, these continuances were not for the purpose of allowing an attorney to become acquainted with the ease. Additionally, although the State attempted to use Appellant’s first successful appeal against Appellant, it does not appear that the error in that case was caused by ma *118 nipulation on Appellant’s part; otherwise, this Court would not have reversed. Based on these factors, the instant case is distinguishable from Langon and Jones.
Under the facts of the instant case, the trial court should have indulged the reasonable presumption in favor of Appellant’s right to counsel and appointed an attorney. See Traylor, 596 So.2d at 968. Accordingly, we reverse and remand for a new trial.
REVERSED and REMANDED.
PADOVANO, J., concurs, and DAVIS, J., concurs in result.

. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

. If a trial court does appoint standby counsel, it is not for the purpose of performing every function a defendant sees fit, whenever the defendant sees fit. Aycock v. State, 769 So.2d 523, 524 (Fla. 5th DCA 2000). The purpose of "standby counsel” is to assist the trial court in conducting orderly and timely proceedings. Behr v. Bell, 665 So.2d 1055, 1056 (Fla.1996). Even if standby counsel is appointed, a defendant who represents himself "has the entire responsibility for his own defense.” Id. at 1056-57. Standby counsel "may participate in the trial proceedings ... as long as that participation does not ‘seriously undermin[e]’ the ‘appearance before the jury' that the defendant is representing himself.” Barnes v. State, 29 So.3d 1010, 1026 (Fla.2010) (quoting Martinez v. Court of Appeal of California, Fourth Appellate District, 528 U.S. 152, 162, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000) (quoting McKaskle v. Wiggins, 465 U.S. 168, 187, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984))).