DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT
*July Term 2014*

**GIBSON PAUL,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D11-2420

[October 15, 2014]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Karen Miller, Judge; L.T. Case No. 11CF001695AMB.

Carey Haughwout, Public Defender, and Ellen Griffin, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Mitchell A. Egber, Assistant Attorney General, West Palm Beach, for appellee.

MAY, J.

The defendant appeals his convictions and sentences for first degree murder with a firearm, aggravated assault with a firearm, shooting into an occupied vehicle, and possession of a firearm by a convicted felon.[1] He raises three issues on appeal. We affirm on all, but write to discuss his argument that the court erred in restricting his use of standby counsel.

The charges arose out of an altercation between the defendant and one of the victims. The defendant shot and killed the victim in her car, and shot another victim. The details of the incident are irrelevant to the issue to be addressed.

---

[1] The defendant was also charged with aggravated battery with a firearm, but was acquitted on that charge.

*Pre-trial Hearings*

Prior to trial, the defendant was assigned a public defender. Conflicts arose between them about how to proceed with the case. The main disagreement involved the defendant's desire to expedite the case for trial. While represented, the defendant filed a pro se demand for speedy trial, which his counsel moved to strike. The defendant then decided to represent himself and discharged his counsel.[2]

After discharging counsel, the defendant again demanded speedy trial. Noting that it was his choice, the judge asked the defendant whether he thought "it would be beneficial to give [himself] an opportunity to do some discovery?" The defendant declared he was ready and had demanded speedy trial months ago. The court set the trial with the assigned public defender appointed as standby counsel.

At a subsequent hearing before trial, the judge conducted a *Faretta*[3] hearing and explained the defendant's right to have an attorney represent him, and the benefits of having an attorney. Because of their ongoing disagreement, standby counsel moved to withdraw:

> And Judge, I understand why we are appointed. It's to assist the Court. So I don't want the Court to think that I am not trying to help out with that. I just feel that we were – the Public Defender's Office, we withdrew the last time Mr. Paul wanted to represent himself, so the Public Defender's Office withdrew but the Court appointed myself as standby counsel which the Court has discretion to do. I just feel – but the purpose of that would be to kind of help the process move along.

The judge responded, "No, the purpose of standby counsel is if this gentleman ever has an epiphany during the course of the trial, someone is available to step in at that moment and say okay, I will finish this trial. That's what it would be for." Standby counsel then explained that he would not be able to resume the trial for the defendant should the defendant decide to let him take over: "We would not be prepared to go to trial. I would waive speedy trial if I were to take over and properly work up this case like it should be." The judge then asked the defendant:

---

[2] The trial judge transferred the case to the Mental Health Division for a competency determination before proceeding. The defendant was found competent to proceed.

[3] *Faretta v. California,* 422 U.S. 806 (1975).

THE COURT: [A] lot of people think it's helpful to do discovery in order to prepare for a trial, do you agree with that?

THE DEFENDANT: Yes, ma'am. I went through all of my discovery. I done went through my whole case.

THE COURT: Okay. And you are good to go with whatever you have, that's your position?

THE DEFENDANT: Yes, ma'am.

The defendant decided that he did not want his public defender as standby counsel: "I don't want him to standby. I don't need him standing by no one. Period. I don't know why he is in the Courtroom today anyway." The court granted standby counsel's motion to withdraw, but before doing so, the court found that standby counsel was an experienced criminal defense attorney:

THE COURT: And that is at the Defendant's specific request that you not even have standby counsel. Is that what you are asking for, sir?

THE DEFENDANT: I asked for co-counsel.

THE COURT: Well, you're not a lawyer so you can't have co-counsel.

THE DEFENDANT: If I request to discharge my counsel, why would you have him as standby?

THE COURT: In the event that you change your mind and you don't want to represent yourself as a pro se non-lawyer.

THE DEFENDANT: That won't happen.

### Trial and Verdict

On the first day of trial, the court conducted another *Faretta* hearing, reviewing the defendant's highest level of education, whether he was under the influence of drugs or alcohol, and whether he had ever been declared incompetent. The court again emphasized the benefits of having an attorney. After a brief recess, the court conducted yet another *Faretta* hearing. The defendant stated that he wanted to represent himself.

At this point, the elected Public Defender for the Circuit intervened. She advised the court that she had spoken with the defendant and told him that if he wanted standby counsel, it would be the assigned public defender because no one else knew anything about the case. The defendant then decided that he did, in fact, want standby counsel. The court reappointed the same public defender as standby counsel.

The defendant conducted his own opening statement, with the State lodging an objection after his first sentence. The defendant responded, "I'm going to need more time." The court reminded the defendant that he had demanded a speedy trial and it was time for opening statement.

After the defendant cross-examined the first witness, the court held a sidebar with the State and the defendant. While it is unclear from the record, it appears that the defendant began consulting with standby counsel:

> THE COURT: Mr. [Paul], you are entitled to represent yourself. You are entitled to have standby counsel. You don't have anything in the middle. So if and until you elect to bring [your standby counsel] back on board, you can't consult back and forth. He's either in or off, so do you want him to represent you?
>
> THE DEFENDANT: I got the names confused of the officers.
>
> THE COURT: Well, I don't know what to help you with. You can either be represented by an attorney or not.
>
> THE DEFENDANT: So, what, waive my trial? Is it going to waive?
>
> THE COURT: That witness has gone. Whether you want to call him back, that's up to you, but you can't straddle the fence. You either have [standby counsel] or you don't. He is not consulting with you. I'm going to have him sit in the back of the courtroom up until the time—
>
> THE DEFENDANT: If I say I want an attorney, I go stop?
>
> THE COURT: No.
>
> THE DEFENDANT: That's what I thought. I was going to continue my trial if I bring him on I thought, that's what I

4

thought.

THE COURT: You want [standby counsel] to assist you or not?

THE DEFENDANT: Yes, ma'am.

THE COURT: You do or you do not?

THE DEFENDANT: Yes, ma'am.

THE COURT: Okay. [Standby counsel].

[STANDBY COUNSEL]: If that—this is what I talked about last week.

THE DEFENDANT: I want to continue.

[STANDBY COUNSEL]: In order for me to properly represent Mr. Paul, work has to be done, we have to take depositions.

THE COURT: That's not the way it's going to work. Mr. Paul made the decision, he has been in court every single time. We have gone through the colloquy. We talked about the education, the fact that he reads, writes English. We talked about the pros of having a lawyer, couldn't really think of any pros of him representing himself. I advised him all along that, yes, he understands that question every time he comes into court, yes, he understands. We have had it three times today, yes, I understand that. Then if at any point Mr. Paul changes his mind, you step in, you go forward. Mr. Paul has created this situation.

[STANDBY COUNSEL]: I understand that, Judge. I am not trying to argue with the Court. I am in no position to take over a first degree murder. I have had the case six weeks. I am not in a position to effectively represent Mr. Paul in going forward right now.

The defendant requested to have his standby counsel represent him.

Standby counsel immediately moved for a mistrial reiterating that he was unprepared. The judge denied the motion. Standby counsel then requested a continuance until the next morning, to which the State

5

objected due to witnesses who had travelled to be at trial that day. The court denied the motion for continuance. The trial continued with standby counsel now representing the defendant.

After the State presented the testimony of another witness, standby counsel again moved for mistrial, "I am not prepared to effectively cross-examine this particular witness." The trial court denied the motion. At the end of the first day, standby counsel again moved for mistrial:

> THE COURT: Do you have any type of authority that would support that the fact that this gentleman has been through umpteen *Faretta* hearings, has always said – even went so far as to say that he didn't even want you involved as standby counsel. He's been evaluated to see whether he's competent. He's competent, it's his choice. He can make his choice, he made it, so this is the position that he's in. We are going to go forward. I'm not frustrated or anything with you. I understand you are laying a record. This is the position that Mr. Paul has found himself in based on the decision that Mr. Paul has made throughout the course of these proceedings.
>
> [STANDBY COUNSEL]: It's just a matter of Defense being prepared for trial, that's all. I'm being ineffective.
>
> THE COURT: Well, I don't think that the ineffective—the fact that Mr. Paul elected to discharge his lawyer, demand a speedy trial, go to trial without having any discovery, that's his choice, because we had multiple, multiple *Faretta* hearings. And, in fact, when he filed the *Nelson* hearing because you said you wanted to take the time to prepare for the case, I didn't even let him have the *Nelson* hearing until he was evaluated to see whether or not he was competent. Whether it's a good decision or bad decision to represent himself, that is a decision that he's entitled to make and he made that.

On the second day of trial, standby counsel renewed his motion for mistrial:

> [STANDBY COUNSEL]: The Defense got appointed with no preparation done in this case whatsoever. Yesterday I was cross-examining witnesses I don't even know who they are.
>
> THE STATE: Judge, I think this was not unexpected, and the

defendant put himself in this position by demanding speedy trial, by asking to represent himself and by having the trial started, and even one or two witnesses, I don't remember how many already testified, by the time, he has now decided to have a lawyer. So because he has put himself in this position, he is not entitled to change the way that the Court is able to administer justice by asking for a continuance, trying to establish error. So we would object to any motion for mistrial being granted.

The court denied the motion.

After the State rested, standby counsel moved for a judgment of acquittal arguing that the State failed to make a prima facie case. The judge denied the motion. The defendant briefly testified that he was already out of state when the shooting occurred. Standby counsel again moved for a judgment of acquittal. The judge denied the motion.

The jury found the defendant guilty of first degree murder with a firearm, aggravated assault with a firearm, shooting into an occupied vehicle, and possession of a firearm by a felon. The court sentenced the defendant to life in prison on the murder charge.[4]

On appeal, the defendant argues that the trial court misunderstood the role of standby counsel and erred in not allowing him to ask questions or otherwise communicate with his standby counsel. He contends that, because of the court's improper restriction, he was forced to give up his constitutionally guaranteed right to represent himself. The State responds that the trial court clearly advised the defendant of the reason she was appointing standby counsel, which she had the discretion to do, and that this issue is not preserved and is based on speculative grounds.

*Preservation*

A defendant must preserve issues for appellate review by first raising them in the trial court. *Harrell v. State*, 894 So. 2d 935, 939 (Fla. 2005). Here, the defendant did not object to the trial court's restriction on his access to standby counsel. In fact, on more than one occasion, the

---

[4] The court also sentenced the defendant to twenty consecutive years for the aggravated assault with a firearm charge, fifteen consecutive years for the shooting into an occupied vehicle charge, and fifteen years for the felon in possession of a firearm charge, with a three year minimum mandatory to run concurrent with the murder charge.

defendant discharged standby counsel. This claim is therefore unpreserved for our review. *See McKenzie v. State*, 29 So. 3d 272, 283 (Fla. 2010) (finding the defendant's claim that the trial court improperly restricted his access to standby counsel was unpreserved because defendant failed to object on those grounds).

Even if the defendant had challenged the restricted use of standby counsel, we see no error in the trial court's appointment of standby counsel for the purpose of conducting the trial should the defendant change his mind about his representation. We review trial court decisions regarding the right to self-representation for an abuse of discretion. *Neal v. State*, 60 So. 3d 1132, 1134–35 (Fla. 4th DCA 2011).

*The Role of Standby Counsel*

With some limitation, a defendant in a criminal trial has the right to self-representation. *Faretta v. California*, 422 U.S. 806, 834 (1975). A defendant who decides to represent himself bears the entire responsibility for his defense, even if he is appointed standby counsel. *Behr v. Bell*, 665 So. 2d 1055, 1056–57 (Fla. 1996).

A defendant has no constitutional right to standby counsel. *Jones v. State*, 449 So. 2d 253, 258 (Fla. 1984). And the trial court has the discretion to appoint standby counsel. *Id.* No defendant has a constitutional right to "hybrid representation." *Sheppard v. State*, 17 So. 3d 275, 279–80 (Fla. 2009).

A criminal defendant is entitled to change his mind regarding self-representation, but it is "implicit in *Faretta* that the right to appointed counsel, like the obverse right to self-representation, is not a license to abuse the dignity of the court or to frustrate orderly proceedings, and a defendant may not manipulate the proceedings by willy-nilly leaping back and forth between the choices." *Brown v. State*, 45 So. 3d 110, 115–16 (Fla. 1st DCA 2010) (quoting *Jones*, 449 So. 2d at 259). In fact, standby counsel's role has been described as "assist[ing] the court in conducting orderly and timely proceedings." *Behr*, 665 So. 2d at 1056.

The Supreme Court of the United States touched upon the role of standby counsel in both *Faretta* and *McKaskle v. Wiggins*, 465 U.S. 168 (1984). In *Faretta*, the Court recognized that a trial court may "appoint a 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary." 422 U.S. at 834 n.46. In *McKaskle*, the Court further explained:

8

A defendant's Sixth Amendment rights are not violated when a trial judge appoints standby counsel—even over the defendant's objection—to relieve the judge of the need to explain and enforce basic rules of courtroom protocol or to assist the defendant in overcoming routine obstacles that stand in the way of the defendant's achievement of his own clearly indicated goals. Participation by counsel to steer a defendant through the basic procedures of trial is permissible
. . . .

*McKaskle*, 465 U.S. at 184.

Our supreme court discussed standby counsel in *State v. Knight*, 866 So. 2d 1195 (Fla. 2003). There, the state appealed an order vacating a death sentence and granting the defendant a new sentencing proceeding. *Id.* at 1198. The defendant cross-appealed and filed a petition for writ of habeas corpus, asserting five claims of ineffective assistance of appellate counsel. *Id.* at 1203. One of those claims was the failure to raise any issues regarding the limitation on his use of standby counsel during the trial. *Id.*

The court reviewed the transcript and found that the defendant specifically refused assistance of standby counsel and "wanted to make sure that there was no insinuation or appearance that [standby counsel] was in any way acting as his counsel." *Id.* at 1205. The court found it clear that the defendant did not want it to appear that he had acquiesced to the limited role that his standby counsel performed. *Id.* The court denied the petition. *Id.* at 1210.

Similarly here, the defendant refused standby counsel and, in fact, had discharged his lawyer before and after his lawyer was appointed as standby counsel. "I don't want him to standby. I don't need him standing by no one. Period. I don't know why he is in the Courtroom today anyway." We fail to see how any limitation on the use of standby counsel can now be argued when the defendant made clear that he did not want standby counsel.

We acknowledge the herculean effort of the public defender to help this defendant before and during the trial. At every turn, the public defender gave sage advice to forgo a demand for speedy trial, to properly prepare for trial, and undertake discovery. Unfortunately, that advice went unheeded by the defendant.

We also acknowledge the patience and diligence of the trial judge to

9

insure the defendant was competent, aware of the advantages of having counsel and the disadvantages of representing himself, and give him multiple opportunities to reconsider his decision. In the end, the defendant chose to represent himself. The outcome was not unexpected. Given the defendant's choice, which is guaranteed by the Constitution, we see no error in the court's handling of standby counsel or any of the other issues raised.

*Affirmed.*

CIKLIN, J., concurs specially with opinion.
LEVINE, J., concurs specially with opinion, in which CIKLIN, J., concurs.

LEVINE, J., concurring specially.

I concur because there is no evidence in the record that the trial court's statements or actions actually prevented appellant from consulting with standby counsel. However, I write to emphasize that the trial court defined the role of standby counsel too narrowly by highlighting only one of the two purposes for appointing such counsel as enunciated by the United States Supreme Court.

As quoted by the majority, the trial court stated that standby counsel had only one purpose. During a pretrial hearing, the trial judge said, "No, ***the purpose of standby counsel is*** if this gentleman ever has an epiphany during the course of the trial, someone is available ***to step in at that moment and say okay, I will finish this trial***. That's what it would be for." (emphasis added). The trial court later reiterated this during the trial when it informed appellant that he could either represent himself or have standby counsel fully represent him, but could not "have anything in the middle." The court told appellant, "[I]f and until you elect to bring [counsel] back on board, ***you can't consult back and forth***," and that "[y]ou either have [counsel] or you don't. He is not consulting with you. ***I'm going to have him sit in the back of the courtroom up until the time*** . . . ." (emphasis added). At that point, appellant stated that he wanted counsel to represent him. Appellant's counsel moved for a mistrial several times based on his unpreparedness and alternatively requested a continuance, but the trial court denied all his requests. It is clear that the trial court felt that appellant could either have the standby counsel represent him as his counsel or have standby counsel on standby and not consult or speak with appellant.

In *Faretta v. California,* 422 U.S. 806 (1975), the United States Supreme Court recognized the role of standby counsel. "Of course, a State may—

even over objection by the accused—appoint a 'standby counsel' to aid the accused if and when the accused requests help, **and** to be available to represent the accused in the event that termination of the defendant's self-representation is necessary." *Id.* at 834 n.46 (emphasis added) (citing *United States v. Daugherty*, 473 F.2d 1113, 1124–26 (D.C. Cir. 1972)).

In *McKaskle v. Wiggins*, 465 U.S. 168 (1984), the Supreme Court further explained the purposes and functions of standby counsel. The court stated that standby counsel could assist "the pro se defendant in overcoming routine procedural or evidentiary obstacles to the completion of some specific task, such as introducing evidence or objecting to testimony, that the defendant has clearly shown he wishes to complete." *Id.* at 183. Further, standby counsel may help the "defendant's compliance with basic rules of courtroom protocol and procedure," as well as "steer a defendant through the basic procedures of trial." *Id.* at 183–84. *See also United States v. Bertoli*, 994 F.2d 1002, 1018–19 (3d Cir. 1993) ("Essentially, standby counsel has two purposes—to act as a safety net to insure that the litigant receives a fair hearing of his claims and to allow the trial to proceed without the undue delays likely to arise when a layman presents his own case. Alternately, we can identify at least four functions that standby counsel can serve: (1) Standby counsel must be available if and when the accused requests help. (2) Standby counsel must be ready to step in if the accused wishes to terminate his own representation. (3) The court may appoint standby counsel in order to explain and enforce the basic rules of courtroom protocol to the accused. (4) The court may appoint standby counsel in order to overcome routine obstacles that may hinder effective *pro se* representation.") (citations omitted).

Of course, "*Faretta* does not require a trial judge to permit 'hybrid' representation" nor is standby counsel constitutionally required. *McKaskle*, 465 U.S. at 183. However, where the trial court appoints standby counsel, it needs to be mindful of the two objectives and roles of standby counsel as referenced in *Faretta* and *McKaskle*: one, to aid the accused if and when the accused requests help; two, to be available to represent the accused when the accused withdraws his right to self-representation.

Clearly, standby counsel is envisioned as having a greater role than merely being silent at the back of the courtroom ready to participate, if and only when the defendant acquiesces to waiving his right to self-representation and allowing standby counsel to take over as counsel. Because this is what the trial court here proposed, I find the court was too narrow in its construct of standby counsel. Nevertheless, although implied

in the record, there is no evidence that the court actually prevented appellant from speaking with standby counsel. Thus, I concur and write only to highlight that once standby counsel is appointed, a trial court should not prevent a defendant from seeking the aid and assistance of standby counsel to "explain and enforce the basic rules of courtroom protocol" and to overcome "routine procedural or evidentiary obstacles" that "may hinder effective *pro se* representation" such as introducing evidence or objecting to testimony. *Bertoli*, 994 F.2d at 1019; *see McKaskle*, 465 U.S. at 183; *Faretta*, 422 U.S. at 834 n.46.

CIKLIN, J., concurring specially.

I also write separately to caution readers of this opinion that the majority opinion does not either expressly or impliedly affirm or in any way endorse the trial court's apparent suggestion that—once a trial judge exercises his or her discretion to appoint standby counsel—the court may then attach a metaphorical asterisk by imposing limitations on the defendant's access to his attorney's advice and counsel.

As a trial judge for over fourteen years, I can appreciate the trial court's exasperation quite understandably caused by the maddening indecisiveness of the defendant—perhaps even bordering on an intentional manipulation of the proceedings. Indeed, this is one of those situations that best demonstrates the exceedingly difficult job of a Florida trial judge. A truly wonderful, rewarding, and gratifying occupation indeed but one which can also cause many a sleepless night and test the patience and stamina of even the most Job-like jurist.

Because it is not clear from the record that the defendant actually tried to consult with standby counsel, I concur with the majority and affirm the conviction.

And I wholeheartedly join with Judge Levine in offering a cautionary warning to our trial court colleagues.

*        *        *

***Not final until disposition of timely filed motion for rehearing.***